FILED & JUDGMENT ENTERED
David E. Weich

Apr 01 2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PETER J. GALLO, | ) | Case No. 08-32828 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ORBIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. **09-03054** |
| | ) | |
| PETER J. GALLO, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This proceeding was brought by the plaintiff, Orbis, Inc. ("Orbis"), to obtain the determination that certain debts owed by the Debtor, Peter J. Gallo (the "Debtor") were excepted from the Debtor's discharge pursuant to section 523(a)(2), (4), and (6) of the United States Bankruptcy Code.

Orbis moved for summary judgment on the issue of whether the debts at issue were excepted from the Debtor's discharge under section 523(a)(6). In its December 31, 2009 Order, the Court granted Orbis' motion on the questions of the state law elements of the torts of

misappropriation of trade secrets and conversion, the amount of damages caused by the Debtor's tortuous acts, and the liability of the Debtor for those damages to Orbis, and denied Orbis' motion on the questions of whether the damages to Orbis were willful and were malicious.

A trial of the unresolved issues was held by the Court on March 3 and 4, 2010. Orbis and the Debtor each appeared and presented evidence in the form of testimony, documents, and trial transcripts. The Court admitted into evidence the exhibits moved by each party without objection by the opposing party. In addition, the Court took judicial notice of filings in the underlying case, including the schedules filed by the Debtor.

Based on the evidence presented and the argument of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The Debtor filed a voluntary petition under Chapter 7, Title 11, United States Code, in this Court on December 31, 2008, commencing the captioned case. Orbis commenced this adversary proceeding by the filing of a Complaint on April 6, 2009.

2. On or about October 1, 2004, Orbis hired the Debtor to assist Orbis in the establishment of a residential real estate appraisal business in the Charlotte area. The Debtor was to put forth his best efforts and to work exclusively on behalf of Orbis. Specifically, the Debtor was to develop a residential real estate appraisal customer base by identifying potential clients and appropriate contact persons therein and by performing the appraisals requested by the customers the Debtor obtained for Orbis. The customer base and the contact information developed by the Debtor as an employee of Orbis was the sole exclusive property of Orbis and constituted its confidential proprietary information and trade secrets.

3. In hiring the Debtor, Orbis committed to him that it would finance the start-up of a residential appraisal business for one year. By June 2005, the Debtor had decided to leave Orbis and told Charles Gallo, who had been the principal representative of Orbis for the Debtor, that the Debtor expected to take Orbis' customers and accounts receivables and begin his own appraisal business. When Charles Gallo explained to him that the accounts receivables belonged to Orbis, the Debtor apologized and agreed to remain at Orbis through the one year commitment period.

4. The Debtor continued to work at Orbis without further discussions about his compensation or his interest in owing Orbis until, in February 2006, at the Debtor's request, the Debtor met with Charles Gallo in Virginia. At this meeting, the Debtor threatened to leave Orbis, taking all of its business, unless Orbis agreed to more than double his salary and pay him a commission on appraisals done in the Charlotte office. On February 17, 2006, Charles Gallo and the Debtor met again to discuss the Debtor's compensation and an offer that the Orbis Board of Directors had authorized him to make to the Debtor. As a part of those discussions, the Debtor agreed to sign and later signed an Employee Non-Compete Agreement. When Charles Gallo presented the offer to the Debtor, the Debtor expressed his dissatisfaction with the offer, despite the potential for increasing his salary substantially.

5. Seeking to improve the discussion with the Debtor, Charles Gallo asked a business acquaintance, Jim Kessler, to serve as a representative of Orbis in the discussions. On March 3, 2006, Jim Kessler emailed a proposal to the Debtor that was estimated to increase the Debtor's minimum potential compensation from $85,000.00 to $151,250.00. On March 5, 2006, the Debtor informed Jim Kessler by email that the latest compensation proposal was "headed in the right direction," and stated he "looked forward to receiving an employee contract" that

3

outlined the terms of employment. The Debtor admitted that, by the time of this email, he had already decided to leave Orbis and that the email language had been dictated to him by his attorney in order to stall for time. On or about March 15, 2006, without prior warning or notice, the Debtor cleaned out his personal belongings from the Orbis appraisal office sometime after the close of business.

6. On March 17, 2006, the Debtor file suit against Orbis (the "State Court Litigation") in the General Court of Justice, Superior Court Division of Mecklenberg County, North Carolina (the "State Court"), seeking a determination that the Employee Non-Compete Agreement he signed with Orbis was unenforceable.

7. On March 28, 2006, the Debtor sent an email using the customer email list he had accumulated while employed at Orbis and began operating a residential real estate appraisal business as a sole proprietor. Thereafter, in July 2007, the Debtor formed a North Carolina limited liability company, HomeSight Holding, LLC, to continue in the real estate appraisal business.

8. Following a trial in State Court in June 2007 on the counterclaim filed by Orbis against the Debtor in the State Court Litigation, a court jury conclusively found that the Debtor converted the property of Orbis by performing appraisals while he was employed at Orbis and kept the proceeds of those appraisals. The State Court jury fixed the damages to Orbis caused by the Debtor's conversion at $51,500.00.

9. The State Court jury also conclusively found that the Debtor misappropriated the trade secrets of Orbis by using their customer email list to obtain business from Orbis' customers after the Debtor resigned from Orbis. The State Court jury fixed the damages to Orbis caused by the Debtor's misappropriation of trade secrets at $233,100.00. Based on its finding, as a matter

4

of law, that the Debtor engaged in unfair and deceptive trade practices prohibited by North Carolina Gen. Statute § 75-1.1, et seq., by violating the North Carolina Trade Secrets Protection Act, the State Court trebled the damages arising from the Debtor's misappropriation of Orbis' trade secrets. The State Court entered a final judgment against the Debtor and in favor of Orbis in the amounts of $51,500.00 for the Debtor's conversion of Orbis' property and $699,300.00 for the Debtor's misappropriation of Orbis' trade secrets.

10. Despite his on-going representations that he intended to remain employed by Orbis, his duty as an employee, and his agreements set out in the Non-Compete Agreement, while still employed at Orbis, the Debtor secretly performed approximately 30 appraisals "on-the-side" and retained the earnings of not less than $9,000.00 from those appraisals.

11. The Debtor admitted at trial in this proceeding and in the State Court trial that he knew that performing appraisal and keeping the money while employed at Orbis was wrong and that he did it because he needed money to meet his financial obligations. The Debtor also testified that he performed several appraisals in the days before leaving Orbis, so that he had money to assist him in preparing to leave Orbis. The Debtor knew that the money he received would have otherwise been paid to Orbis, but he performed the appraisals and kept the money anyway.

12. The Debtor's misappropriation of Orbis' trade secrets was part of a long-term plan by a man who was frustrated with his salary, frustrated with his life, and who was envious of the successes of Orbis. The Debtor thought that Orbis was taking advantage of him and he wanted a way out. Instead of resigning and getting another job or moving to another state, the Debtor chose to take Orbis' customers for his own business.

13. The Debtor was in financial straits. He did not have the financial wherewithal to go out and start a business without customers. He also did not have the financial wherewithal to buy the appraisal business from Orbis.

14. After finding out from Charles Gallo in June 2005 that he could not simply walk away with Orbis' appraisal business and that he had little or no likelihood of becoming a shareholder of Orbis, the Debtor decided to take Orbis in another way. He knew he could not leave at the end of his one year commitment to Orbis, in October 2005, because the appraisal business was slowing down and was going to remain slow until, as he predicted to Orbis, Spring of the following year. In fact, the Debtor timed his exit from Orbis and his use of Orbis' trade secrets for when he had the highest chance of succeeding in starting an appraisal business on his own.

15. The Debtor was well aware of what it meant to use a company's customer list. He showed an appraiser contract to Charles Gallo in October 2004 that contained language that protected the company's confidential information, including compilations of past, existing, or prospective customers. He knew Orbis claimed the rights to its customer list because the Debtor had signed the Employee Non-Compete Agreement with Orbis in February 2006 that also include a provision that protected the customers of Orbis. The Debtor was so concerned about his ability to use Orbis' trade secrets, he hired two different attorneys in the days immediately before leaving Orbis to advise him through his process of leaving Orbis and starting his own appraisal business. On the same day he sent the email to Orbis' customers, Orbis sent the Debtor a letter demanding that he cease use of Orbis' trade secrets, including all customer information. The Debtor was so knowledgeable about the importance of protecting customer

6

information, he had his own independent contractor appraiser sign an agreement that included a provision protecting his own customer information.

16. The Debtor was so determined in his plan to take Orbis's customers that he used one of his attorneys, Mr. Bass, to mislead Orbis in where he was in his negotiations on a new employment agreement with Orbis. Before leaving Orbis, he purchased errors and omissions insurance and a license to use the ACI appraisal software he had been using at Orbis. In between the day he left Orbis and the day he sent the email to Orbis's customers, the Debtor did not marketing and had no clients, even though he was preparing to start his own appraisal business. He also did limited marketing afterwards.

17. The Debtor left Orbis in the face of an offer from Orbis that would have raised his income by sixty-five thousand dollars a year with no other job prospects. This act is a clear indication of his intent to steal Orbis' customers.

18. The Debtor asserted that he only sent the email to Orbis' customers to fulfill his ethical duty. However, he did not explain why he did not consider alternatives to that approach that would not have also included his opportunity to get business from Orbis' customers. He also did not explain why he followed the email by taking the Orbis' customers who contacted him. He continued in taking Orbis' customers, as reflected by his 2006 income, despite all of the other indications, including the agreement he signed with his independent contractor.

19. The Debtor has shown by his prior words and acts that his credibility is wanting. He admitted he lied to his father about the lease of a new car. He failed to explain how he was able to buy a three hundred thousand dollar house when he was in financial distress at the time of purchase. He admitted asking Charles Gallo to lie about his salary to help him get financing for

7

that house and lying to Orbis about the good faith negotiations that Orbis was trying to engage in with him in March 2006.

20. The Debtor willfully and maliciously injured Orbis and its property in the amounts set forth in the State Court final judgment.

## CONCLUSIONS OF LAW

20. The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and § 157(a). This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. § 1409(a).

21. A finding that a debt is non-dischargeable under 11 U.S.C. § 523(a)(6) requires a showing that there was a deliberate or intentional injury arising from the acts of a debtor and that the injury caused by the debtor's acts was both willful, in that there was either an objective substantial certainty of harm or a subjective motive to cause harm, and malicious, in that the act causing injury is done deliberately and intentionally in knowing disregard of the rights of another.

22. The injuries to Orbis and its property caused by the Debtor's conversion of Orbis' money and property and by the Debtor misappropriation of Orbis' trade secrets were each deliberate or intentional injuries arising from the Debtor's acts.

23. The injuries to Orbis and its property caused by the Debtor's conversion of Orbis' money and property were willful in that it was substantially certain that the Debtor's performance of appraisals outside his employment with Orbis and retaining the proceeds would cause harm to Orbis, in that the money he received would have otherwise been paid to Orbis. The injuries to Orbis and its property caused by the Debtor's conversion of Orbis' money and

8

property were malicious because he knew doing the appraisals and keeping the money were wrong and he intentionally kept the money despite that knowledge.

24. The injuries to Orbis and its property caused by the Debtor's misappropriation of Orbis' trade secrets were willful in that the Debtor had a subjective motive to cause harm and there was an objective substantial certainty of harm to Orbis from his acts of misappropriation. The injuries to Orbis and its property caused by the Debtor's misappropriation of Orbis' trade secrets were malicious because he acted knowing that Orbis had an interest in the trade secrets.

25. The debt owed to Orbis by the Debtor arising from his conversion of Orbis' money and property, in the amount of $51,500.00 is not discharged by the Debtor's discharge previously issued by this Court, pursuant to 11 U.S.C. § 523(a)(6).

26. The debt owed to Orbis by the Debtor arising from his misappropriation of Orbis' trade secrets, in the amount of $699,300.00 is not discharged by the Debtor's discharge previously issued by the Court, pursuant to 11 U.S.C. § 523(a)(6).

Based on the above FINDINGS OF FACT and CONCLUSIONS OF LAW, the Court will enter judgment against the Defendant by separate Order.

This Findings of Fact and Conclusions of Law    United States Bankruptcy Court
has been signed electronically.  The judge's
signature and the court's seal appear at the top
of the Findings of Fact and Conclusions of Law.